Thank you, Your Honor, and good morning, Your Honors, and may it please the Court. Jonathan Peña-Mancinas for the appellant, Alina Malkin, and I would like to reserve a minute of my time for rebuttal. This is a case about a record taken out of context to deny Social Security disability benefits at Step 2 of the sequential analysis. Ms. Malkin applied for disability insurance benefits, alleging that she had become disabled in January of 2012. She was denied benefits when the judge found that her anxiety with panic was not a severe impairment. Now, Ms. Malkin sought out psychiatric care prior to and after the alleged onset date. She sought out psychiatric care, or I knew she was seeing a psychologist, but I thought that was one of the issues, was that she never did seek out psychiatric care. Oh, to the contrary, Your Honor. The claimant did see Dr. Kaplan for, it looks like it was over a year, from 2011 to December of 2012. Was he a psychiatrist or a psychologist? Psychiatrist. M.D., Your Honor. And then the, that's, I believe that's going to be the records that existed, and even cited to by the administrative law judge as a basis for finding that the claimant's symptoms were not credible, but that's a separate issue that I'll get into in a moment. After the treatment with the psychiatrist, the claimant indeed went on to seek therapeutic care from a psychologist, Dr. Bovarsky, and saw the doctor for multiple times on a weekly basis for therapy. Now, despite this treatment, the claimant, and based on the psychologist's acknowledgement, the claimant's anxiety led to many of these ER visits that we see in the record. Now, the psychologist acknowledged, and the ALJ acknowledged, and even the emergency room attendant, the doctor there, acknowledged that these ER visits were simply due to anxiety. Now, taken together, the claimant has surpassed the de minimis standard, that is that the evidence established that her anxiety was more than a slight abnormality, and indeed had more than a minimal effect on her ability to function in the workplace. The de minimis standard is a screening tool, and it's intended to bar or to get rid of these fraudulent claims. Now, certainly an impairment such as anxiety that prompts emergency care treatment, despite ongoing care for several years, certainly meets that threshold of the de minimis standard. Now, as I mentioned earlier, the claimant's original psychiatrist, Dr. Kaplan, started treatment in October of 2011. And on that mental status examination, this is important, he notes that the claimant's mental status exam reveals depressive mood, anxiety, poor concentration, thought content was isolated, and this is at administrative record 220. Those findings carried forward through the end of the treatment in December of 2012, well beyond the alleged onset date. The claimant then went on to see Dr. Bovarsky in April of 2013. The goal there was for Dr. Bovarsky to help treat her panic attacks. Despite this treatment, though, over the course of three years, the record demonstrates that over 40 emergency room visits are in the record. Not all of those visits have any notation that suggests it was related to anxiety, though. Some of them do, but not all of them. So, do you need to convince us that all 40 were about anxiety? No, Your Honor, I don't think so. I think the record supports that a lot of those emergency room visits were indeed the result of the anxiety. This is documented by Dr. Bovarsky. As I mentioned earlier, even the ALJ acknowledged that a lot of those visits were anxiety-related. And when they screened her for other physical potential impairments, even the attending emergency room physician concluded that he suspected it was going to be an anxiety-related impairment. They weren't able to find any physical abnormalities or any etiology that can be supported by a physical impairment, so they connected it to the anxiety. And that was actually one of the things that Dr. Bovarsky was treating her for, to deal with her urge to go to the emergency room as a coping mechanism, as they called it, her safe place. And this is true. And for the record, administrative record, I believe it's ER 57, documents the judge's acknowledgement that these were indeed anxiety-related. There is a conflict between the judge's findings that these impairments don't meet that de minimis threshold and the finding that the claimant indeed had to go to the ER as a result of her ongoing anxiety. Well, but counsel, I think part of the problem here, and this is what I tried to spend some time fleshing out, maybe you can help me, is there is a conflict between even some of the medical experts, and in fact, her own medical experts and her own testimony. Do you believe that the ALJ erred by discounting Ms. Malkin's testimony because it seemed in certain instances to be contradictory to what Dr. Bovarsky, her own physician, had to say about the severity of her impairment? So I think therein lies one of the other issues that we brought up in our briefs. The judge noted that there was an inconsistency because the doc, Dr. Bovarsky, noted that she had gotten better and that she was learning to manage her symptoms. However, Your Honor, part of the argument here is that those improvements, those wins were short-lived. The notes have an equal, if not more, number of reports which show that despite these increases in improvement, there was periods where there were multiple ER visits, even in that very same week. The fact that she was able to improve for a day, even a couple of weeks, doesn't detract from the longitudinal record that shows that despite ongoing therapeutic care, the claimants still had to go to the ER as a result of this anxiety and panic. Some of the inconsistencies that the judge noted are just inaccurate. For example, the judge does note that Dr. Kaplan's report shows that she's stable. Your Honor, the record actually shows that stability was a goal, not that she was stable. Indeed, the original 2011 report showed that she had difficulties with concentration, poor concentration. The 2012, the very last visit, said that she was stable. No, thank you. I think that's helpful. What I'm trying to figure out is what is our standard of review here? Because I think you're right that as you look through this, in some areas the ALJ did make findings that are either not supported or, in some instances, contradicted. But don't we review for substantial evidence, and if we review for substantial evidence, if the ALJ has five or six reasons for dismissing or discounting Ms. Malcolm's testimony, even if two or three of those don't seem to be supported, don't we still have to credit the ALJ's finding based on, you know, the two or three that may be? We may even take a different view. You're making a pretty compelling case for why Ms. Malcolm is disabled, but we're not arguing this at new. And so what do we do with that? Do we have to discount, do we have to go through every one of the ALJ's findings and discredit it in order to rule for your client? No, Your Honor. The diminished standard at step two simply requires that the claimant show that her impairment is more, has more than a minimal effect on her ability. It's more than a slight abnormality. That's the standard. The reasons that the judge used to find that it was not are all invalid, and we outline every single one of those, including the statement that he used for Dr. Kaplan, the statement that he used for Dr. Bavarsky, and the statements that he used about her daily activities. These are all reasons that he gave that are inconsistent with the actual record. Well, but one of them that he relied on, that the ALJ relied on, was that there was no evidence to substantiate any limitations in her ability to sit or walk, or certainly not to the degree that she alleges. And it seems like that would have been mentioned in the medical records. So I mean, there does seem to be some suggestion that she was embellishing how severe it was. Now, you're right. The ER visits seem to be kind of record evidence on that. But I guess that's what I'm getting at, is there does seem to be some areas where she seemed to be embellishing, even beyond what her own medical treaters were suggesting, was her impairment. Your Honor, the law does require, and the circuit has required, that the entire record be taken as a whole and read as a whole. The report that the ALJ cited to, specifically the 2014 medical source statement, indeed indicates that there were physical symptoms and hypersensitivity to these physical symptoms that were oftentimes triggered by her anxiety. The fact that she believes that she's limited in these physical ways is not inconsistent with the various different emergency room visits that she went in for, whether it be for palpitations, headaches, or just plain anxiety. These are consistent with the entirety of the record. And we don't have to show objective evidence that specifically outlines why she should be limited to physical limitations, including not being able to stand, sit, or walk. That's not what the de minimis standard is. We just simply have to show that it goes beyond more than a minimal impact. And here, the records from the psychologist, the records from the psychiatrist, and the records from the emergency room all support the finding that the claimant has a severe mental impairment. Certainly, we're not arguing here that there are physical limitations. We're not arguing that there's objective evidence to support that. Instead, we're arguing that those physical manifestations, what the claimant believes to be physical limits, are the result of her severe mental impairment. Okay. What I'll do is I'm going to stop you right there. I'm going to give you a minute for rebuttal, as you requested. Thank you, Judge. I appreciate it. And we'll go. Thank you. So sit tight. And we'll now hear from Ms. Bond. Ms. Bond, are you still on the line? I am. Can you hear me clearly? We can. Okay. And now, in terms of you keeping track of your time, can you see the clock? Yes, I do have a clock available. Okay. Great. So I will go ahead. And if you'd like, I can give you a one-minute warning. That would be appreciated. Thank you. I'll do that. And you may proceed. Thank you, Your Honors. Shea Bond on behalf of the Commissioner of Social Security. To answer Your Honor's question about the standard of review that applies to this case, it is a substantial evidence standard. It's a standard that still applies at Step 2 of the sequential evaluation. And the review constitutes, I agree with counsel, that it is the record as a whole. And it's our position that when you review this record as a whole, the ALJ's decision is supported by substantial evidence. Can I just clarify something about the standard? So in order to discount the claimant's subjective symptom testimony, the ALJ needs clear and convincing reasons, right? Your Honor, that is the standard in this circuit. I know that we mentioned our disagreement with that. That's just to preserve any appeal rights that we might have. But yes, correct. That is the standard that's applied in this circuit. So what do we do with that? When the standard is that the ALJ needed clear and convincing reasons, how do you combine that with the substantial evidence standard? Do you need substantial evidence of things that are clear and convincing? Well, I mean, I think that's part of the problem with the clear and convincing reasons standard is it's a little unclear what is the clear and convincing, I mean, how that standard applies. But for the substantial evidence standard, it's more than a mere scintilla. The evidence has to be more than a mere scintilla to support the conclusions of the ALJ. So if we're applying that to the rationale that the ALJ gives for evaluating evidence, say the subjective symptom testimony, is there substantial evidence in the record to support those reasons? Now, a clear reason can be, did the ALJ state the reason? And then we would say that yes, the ALJ gave specific reasons, whether it was the lack of objective support or the types of treatment and the effect of treatment or daily activities. Those are clear reasons. And then if we're to say convincing, it still is a substantial evidence standard. So is there substantial evidence to support each of those reasons? And we would say yes, there is more than a mere scintilla to support the conclusions that the ALJ reached. So looking at our cases like Garrison v. Colvin, Burrell v. Colvin, Smolin v. Chater, it seems like what our court did was ask whether there was substantial evidence for a particular fact finding and then ask whether that fact was a clear and convincing reason to discount the testimony. Do you agree with my description? I'm not sure if that's really the same as what you just said. So, I mean, again, the standard is the substantial evidence standard. To say that I think that if it's clear, it's can you clearly tell from the decision that the ALJ invoked the reason if it's convincing? Again, the convincing has to be based on the substantial evidence standard, and it's more than a mere scintilla. I think that's part of the problem with basically the clear and convincing reason standard, is I think there's a tension there. And ultimately, really, the Act says that the ALJ's rationale must be supported by substantial evidence. Now, there could be... Let me ask you it this way, because wouldn't you look at the clear and convincing reason that was given by the ALJ and then ask, is there substantial evidence to support that clear and convincing reason? And if there's not, then that clear and convincing reason falls away and you have to see whether it's supported by anything else. And maybe what Judge Friedland's asking is, even if there is substantial evidence to support the clear and convincing reason that the ALJ gave, do we... We might decide it differently, but there's substantial evidence to support that. Do we then engage in a separate inquiry to say, well, even though there's substantial evidence to support that, we don't find it clear and convincing, even though it might be supported by the record? Well, under that scenario, if we're saying that there is a substantial evidence to support a clear and convincing reason, I think then that the ALJ's decision would be affirmed under that circumstance. Because once you have that, there would be no other... But that seems to presuppose that we don't have a second line of inquiry about whether, okay, there's substantial evidence to support the purported clear and convincing reason, but we don't think that the reason is actually clear and convincing. Can we separately review whether we think that a reason is clear and convincing, or we are only limited to looking at substantial evidence? Well, I almost feel like that's kind of not the same thing, but it's looking to see if the rationale that the ALJ provided has support in the record, and if it's articulated well enough in the ALJ's decision so that this court can discern whether the reason has the support. So, I mean, I don't know if that answers necessarily the... So Garrison B. Colvin says, even assuming the daily activities are what the ALJ is saying, that would not be clear, convincing, and specific reasons to discredit the claimant's testimony. So there's clearly a separate step in our case law of clear and convincing. That's how we have this standard that you're saying we shouldn't have. Isn't that right? Well, it's saying that if the court is looking at the reasons that the ALJ gave, it's still looking to the substance of whether that is supporting the ALJ's conclusion. And so if the court is not convinced that the ALJ's citation to say the daily activities related to, you know, the limitations at issue, or it was reasonable for the ALJ to have relied on the type of activity or the extent of the activity, I'd still say that falls back on the substantial evidence standard. The court obviously is reviewing this and can disagree that the evidence the ALJ cites will support the ultimate conclusion. Maybe I should ask you, like, a specific part of the record here. So one of the disputes, as I understand it here, is about whether Ms. Malkin's household activities show that she's actually more functional than she claims. And my understanding is the ALJ said that she could take care of her children and could cook, but her testimony was that she could only take care of her children with the help of others, that she could only cook small things and then would have to stop, that she couldn't drive at night and couldn't drive for more than five minutes and not on the freeway. And there are all these things that I guess you could characterize as partly functioning, but you could also characterize them as really not functioning well at all. Correct. And I don't believe that the ALJ said that she was fully functional. The ALJ was acknowledging that daily activities she had said that she needed some assistance, but she also told the consultative examiner that she was able to carry out her daily activities. That's on page 25 of the record that she told the consultative examiner she was able to take care of all of her basic needs as well as her family needs. So, I mean, the ALJ is balancing what the record said against what the claimant claimed and ultimately concluded that the evidence went with what she was describing to the consultative examiner to say that she was more functional than she alleged. But the statement to the consultative examiner is vague, right? So, yes, I guess she's carrying out her activities with help of others and only sometimes a day. Again, I mean, how does that statement, the general statement that isn't actually inconsistent with the more detailed statements, how does that prevent the more detailed statements from kicking in? When she was talking to Dr. Ritzo, the consultative examiner, the statement in looking at Dr. Ritzo's report at page 1322 actually said that the claimant is able to take care of all of her basic needs. She has a driver's license. She's able to take care of all of her family's needs at this time. So, the fact that she's saying that she can take care of all the family needs, that doesn't talk about any kind of assistance that she later on said that she could not take care of her children, she could not take care of the household. So, I would say there actually is an inconsistency there. The ALJ, again, is pointing out that that's what she told the consultative examiner. She's more functional. So, the ALJ is giving a specific reason, a clear reason, and if we're looking into Dr. Ritzo's report itself, that's the support for it, and to me, that's convincing that she's saying that she's reporting to a doctor that she can perform all of her activities and there's no indication in there that she's receiving the assistance that she later... One minute, counsel. I'm sorry? One minute. Oh. Your Honor, I would like to say that in this record, if you're looking for the objective support for a severe impairment, which the claimant had to prove here, Dr. Bovarsky's records do not have the clinical support. She did not record objective mental status examination findings, and I disagree with the opposing counsel's cases cited in the reply brief, particularly Buck and Ryan, as a claimant's subjective statements essentially alone can provide the necessary missing objective support. That's not what those cases stand for, and when you look to the contemporaneous emergency room records where claimant did speak... Do you have a case that describes what kind of objective support you need for a mental impairment like she's describing here? Because I know a lot of the cases that I thought you were citing were about physical impairments. So I'm going to refer back to actually the cases that my opposing counsel cites in the reply brief. So Buck and Ryan, and although counsel has represented those as saying that the claimant's subjective complaints are kind of the primary focus, both in Buck and Ryan, they talked about the clinicians actually did clinical interviews and performed mental status examination findings. And particularly in Ryan, this court actually outlined the type of mental status examination findings, and the list included, and it was an anxiety case as well, behavior that was odd, rapid speech, easily agitated, very angry, distraught, nervous, shaky, and edgy. So those are the types of objective examination findings that it's kind of like I guess I would call manifestation of the mental impairment during a mental status examination. Did Dr. Kaplan do an examination like that? I don't remember the terminology, but the number 50 is in my head of the... The GAF. Yep. So Dr. Kaplan's initial portion when she first started seeking the treatment during the relevant period did record those. But then when you get to the emergency room records for a very lengthy period of time, which also overlapped Dr. Kaplan's treatment, I think about half of the time that he treated, you don't see those types of examination findings. And I would submit that given the nature of the impairment that Klayman described to the LJ, and as Dr. Bavarsky stated in the opinion, that you would expect to see some sort of abnormalities during the clinical examination findings during the hospital records, but consistently, except for maybe one or two visits when Klayman did claim of anxiety, and one of those visits she actually had stopped taking her medication, her Celexis, so that explains the exacerbation of symptoms. But consistently, the emergency room records show that she was in no acute distress, she was cooperative, she had no respiratory distress, she had normal mood and normal affect. So the fact that over a several year period of time, we have hospital records that consistently show these normal mental status examination findings, and we have no such mental status examination findings to contradict that from Dr. Bavarsky, we submit that that is the substantial evidence that would support the ALJ's conclusion that the Klayman, although definitely having a medically determinable diagnosed mental impairment, did not reach the level of severity as defined in the Act and the Commissioner's regulations. Unless we have any other questions from the panel? All right, seeing none. Thank you very much for your argument. We'll move back to Mr. Pena, and Mr. Pena, I'm going to give you two minutes, and actually a question for the courtroom deputy. Is this Ms. White or Ms. Manning operating the clock? It's Deanna, Ms. Manning. Okay, very good. My sheet says Olivia White. I just want to make sure I'm calling you by the right name, since I can't see you. All right, Mr. Pena, you have two minutes. You may proceed. Thank you, Your Honor. So, with regard to the opposing counsel's statement about the opinion not being based on any objective findings or any records, I think context, again, matters in this case. This is a psychologist whose goal was to manage the plaintiff's anxiety and the related panic and try to get under control these chronic ER visits that result from that very panic. The report that the judge discounted specifically states that this opinion in 2014 by Dr. Babarsky is based on her observations of the claimant. The report itself documents what those observations are. Could the notations or the therapy notes have been better? Absolutely. Well, I thought that they were more focused on what Ms. Malkin told the psychologist, which is why I think her credibility is important here. So, help me where I'm wrong, because, I mean, there was a lot more in that report than just what that psychologist saw in those one-hour sessions. He was reporting on a whole bunch of scenarios that Ms. Malkin reported to him about things that were happening, you know, outside of the sessions. So, help me understand, what did Dr. Babarsky state that he observed in the session that would support the severe impairment? Well, Your Honor, the report, this is going to be ER 1393, oh, pardon me. The report itself goes into detail about what the claimant stated was occurring during this time, but also documented various different periods where he stated, or she stated, rather, that the claimant was in panic or had anxiety attacks or in distress. They're not in what the defense counsel says should have been in SOAP format. However, the record clearly documents the variety of different anxiety episodes that the claimant has supported by those ER visits, which, admittedly, they don't, she didn't go in there because she had, she said, she didn't tell the ER staff that she was having an anxiety attack. Rather, that was a coping mechanism to deal with panic. She was fearful of having a heart attack, or she was fearful of what might happen if she didn't go to the ER. All of this is documented in the treating psychologist's opinion statement. The issue of subjective statements about the severity of her impairments, Your Honor, the doctor, rather, the ALJ provided reasons that are inconsistent with the record. The failure to see a psychiatrist, that the claimant somehow disobeyed her psychologist's order, but the record shows that the claimant has a difficult time driving on a freeway. She has difficulties with new places. She can't be away from home for more than a few hours at a time. These are things that are the result of her impairment itself, and this court has previously cautioned against chastising a person with mental impairments for failing to seek proper rehabilitation. The activities that they be living, as Judge Suleman mentioned earlier, The record that the judge cited to was her husband. Her husband didn't report that she could take care of herself, her family, and her kids. Indeed, the husband noted that she could not because of fear and panic. And indeed, the claimant couldn't even shower without her husband being there because of her fear of what was to come. She didn't regard herself as a children's primary caretaker. Instead, that job was her older children's, her husband, her in-laws, and her parents. These are things that are inconsistent with the judge's own findings. And so we would ask, I see I have a few seconds left, We would ask that your honors find that the decision was not supported by substantial evidence and re-amend this for further proceedings. Thank you very much, counsel. Thank you both of you for your argument in these cases. Both of you did an excellent job. I really appreciate your time here today. Thank you. We'll move on to the next argued case. I hope I'm pronouncing this correctly. Stabnott v. Barr. I think I got Barr right, but Stabnott. Hopefully I got the first name right.
judges: Owens, Friedland, Nelson